Hanbin Wang, Esq.
Law Offices of Hanbin Wang
277 Broadway, Suite 506
New York, New York 10007
(212)577-2220
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| SHANGHAI EIDIE INTERNATIONAL TRADING CO. LTD,<br>         Plaintiff,<br>    vs.<br>TRANSMODAL CORPORATION, SHANGHAI HANBO INTERNATIONAL LOGISTIC CO. LTD D/B/A E.L.G. SHANGHAI LTD, ANDEVER-LEADING INTERNATIONAL INC.,<br>         Defendants. | Case No.:<br>**VERIFIED COMPLAINT BASED ON MARITIME CONTRACTS AND DEMAND FOR JURY TRIAL FOR CLAIMS IF ANY UNDER RULE 38(a)** |

Plaintiff, SHANGHAI EIDIE INTERNATIONAL TRADING CO. LTD ("EIDIE" or "plaintiff"), by and through its attorneys, Law Offices of Hanbin Wang, complaining of the Defendants, TRANSMODAL CORPORATION("TMC"),SHANGHAI HANBO INTERNATIONAL LOGISTIC CO.LTD D/B/A E.L.G. SHANGHAI LTD, AND EVER-LEADING INTERNATIONAL INC., (collectively "ELG" for the last two defendants) by way of Verified Complaint alleges as follows:

**I. PARTIES**

1. At all material times, plaintiff,SHANGHAI EIDIE INTERNATIONAL TRADING CO. LTDwas and still is a corporation

organized under the laws of China and having its principal place of business located at Room 1304, #1725 Huang Xing Road, Shanghai, China.

2. At all material times, plaintiff was engaged in the business of manufacturing and exporting merchandise out of China to countries such as United States and was the shipper, the owner and the real party in interest of the six-hundred and sixty-two (662) cartons of leather clothing ("cargo") with an invoice price of $269,505.42 under the seven (7) House Bills of Lading ("Bill") issued by the Defendant, TMC on October 2, 12 and 21, 2011 respectively for transportation by sea from Shanghai to Los Angeles/Long Beach, California.

3. At all material times and at the time of filing this action, plaintiff did not and do not transact business in this judicial district. Plaintiff was requested to hire TMC by one of TMC's import customers, Swaxx Corporation which was organized under the laws of the State of New York ("Swaxx"), for the transportation of the cargo purchased by Swaxx on a letter of credit.

4. At material times, defendant, TRANSMODAL CORPORATION, was and is still a corporation organized under the laws of the State of Massachusetts with its principal place of business located at 48 South Franklin Turnpike, Suite 202-204, Ramsey, New Jersey 07446.

5. At all material times, TMC was a U.S.-registered Non Vessel Operator Common Carrier ("NVOCC"), or what is commonly known as a "freight forwarder."TMC was also a Customs House Brokerage firm ("CHB").

6. As an NVOCC, TMC does not own the vessels (whether ocean going or air) by which TMC by itself or through agents around the world, arranges the passage of its customer's freight, which is typically encased in transport containers of the type found on ocean going container ships, or being pulled by tractor trailers on U.S. and foreign highways.

7. As an NVOCC, TMC by itself or through its agents around the world, receives a master bill of lading issued by the vessel owner, designating TMC as the consignee to receive the freightat the U.S. delivery ports. TMC issues its own House Bill of Lading in connection with the corresponding master bill of lading, designating the consignee according to the shipper's instruction.

8. TMC's CHB business involves the clearance of freight through United States Customs. TMC accomplishes this CHB function by paying customs duties for and on behalf of customers, and by receiving the freight from the vessel owner according to the master bill of lading, and bymoving their freight from bonded to general warehouses. Ultimately TMC moves freight into the hands of consignees designated on TMC's Bills.

9. Some of TMC's ancillary services include warehousing, inland transportation of freight by truck and relatedservices including packaging, labeling, back office facilities, real time computer logistics, and essentially full service movement of freight from point "A" to point "B" by whatever legal means the customer requires.

10. The majority of TMC's operations involve the importation of goods from overseas on behalf of importer customers by way of ocean going container vessels.

11. TMC also employs independent affiliates acting as TMC's agents located in various countries, including China and India.

12. At all material times, defendant, SHANGHAI HANBO INTERNATIONAL LOGISTIC CO. LTD D/B/A E.L.G. SHANGHAI LTD was a corporation organized under the laws of China and with its principal place of business located at Room 1407, Global New Times Plaza, #1666 North Si Chuan Road, Shanghai, China,was a China-registered Non Vessel Operator Common Carrier ("NVOCC"), or what is commonly known as a "freight forwarder," and was an agent for Defendant TMC for all TMC's U.S. in-bound shipments from China, especially for those shipments of the TMC's importer customer Swaxx.

13. At all material times, defendant, EVER-LEADING INTERNATIONAL INC. was a corporation organized under the laws of the State of California and with its places of business both at Room 1407,

Global New Times Plaza, #1666 North Si Chuan Road, Shanghai, China and at 1320 North San Gabriel Blvd., Rosemead, California, was a U.S.-registeredNon Vessel Operator Common Carrier ("NVOCC"), or what is commonly known as a "freight forwarder," and was a subsidiary of defendant, SHANGHAI HANBO INTERNATIONAL LOGISTIC CO. LTD  D/B/A E.L.G. SHANGHAI LTD.

## II. JURISDICTION AND VENUE

14. This Court has original jurisdiction over the subject matter of this action pursuant to Article III, Section 2, U.S. Constitution, and 28 U.S.C. §1331 (federal question), §1333 (maritime) and F. R. Civ. P. 9(h)(maritime) as this matter relates to maritime contracts for the carriage of goods by sea to ports of the United States in foreign trade and thus comes under the laws of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §30701, and the federal maritime common law as it applies to international carriers and transportation.

15. Also the Clause Paramount of TMC's Bill specifically subjects all the shipments under the 7 Bills to be governedby COGSA to the extend that TMC's Bill's terms are trumped by COGSA if they are inconsistent with COGSA.

16. TMC's Bill further specifically extends the application of COGSA beyond tackle to tackle to cover period after cargo being discharged form ocean vessels until proper delivery is made.

17. The terms of the Bill, especially those concerning TMC's absolution and limitation of its liabilitiesare not enforceable because they are violating COGSA.

18. Plaintiff did not have adequate notice or fair opportunity to opt out of the adverse effects of those terms.

19. The terms should be strictly interpreted against TMC.

20. Subject matter jurisdiction over remainingnon-federal claims if any are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367.

21. This Court has personal jurisdiction over each of the Defendants. Since all materials times, defendant TMChas conducted business in and has had continuous and systematic contacts with this federal judicial district.Defendant ELG has had minimum contacts with this federal judicial district by acting as agent of TMC such that the maintenance of this action does not offend traditional notions of fair play and substantial justice. The claims against ELG are directly related to and/or arise out of ELG's contacts with this federal judicial district.

22. On information and belief, ELG also has consented to the personal jurisdiction of this judicial district by way of agency agreement with TMC.

23. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1)because defendant TMCis a resident of this federal

judicial district.

### III. FACTUAL ALLEGATIONS

24.  Between September and October 2011, EIDIE consigned the cargoin good order and condition to TMC's agent in Shanghai ELG,which accepted under the authority and approval by Keith Block, Paul Wong, Grace Quintana, Christopher Peterson and Max Kantzer, all TMC's officers and employees, for transportation by sea from Shanghai to Los Angeles/Long Beach, California.

25.  In return, TMC through its agent in Shanghai – ELG, issued to EIDIE the above mentioned 7 original Bills with the same authority and approval. A copy of the front of the Bills plus corresponding invoices and packing lists are attached as Exhibit A.

26.  TMC was specifically notified by EIDIE and specifically noted by agreement on the 7 Bills that the consigned cargo was the subject of a sale to Swaxxunder the payment term of at sight letter of credit against original Bills among other documents.

27.  The buyer of the cargo Swaxxmust pay the full invoice price in exchange for the original Bills to pick upthe cargo from TMC in Los Angeles/Long Beach. No original Bills, no delivery or no authority to delivery by TMC.

28. As a result of above specific instruction by EIDIE and of TMC's specific agreement to such instruction, under the TMC's 7 original Bills, the consignee was all "to the order of RBS Citizen, N.A.," the Swaxx's bank."To notify party" was all "Swaxx Corporation."

29. Between October and November 2011, RBS Citizen, N.A. refused payment under the letter of credit and returned all 7 original Bills back to EIDIE, who is still in possession of the 7 original Bills.

30. The cargo was delivered in good order and condition to the exclusive custody, care and possession of TMC through its agent in Shanghai - ELG, and loaded on board ocean vessels booked by TMC through its agent ELG, on October 2, 12 and 21 2011 respectively. Such delivery to ELG was acknowledged and recognized as if to TMC through various e-mails by Keith Block, Paul Wong, Grace Quintana, Christopher Peterson and Max Kantzer, all TMC's officers and employees.

31. Upon cargo's arrival in Los Angeles/Long Beach some ten plus days after the departure in Shanghai, TMC had not contacted EIDIE or RBS Citizen, N.A. for authorization to release without presentation of original Bills and simply misdelivered the cargo to Swaxx without presentation of original Bills by either actual misdelivery or by issuing

document allowing such misdelivery without any legal authority under the terms of the Bills.

32. Neither EIDIEnor RBS Citizen, N.A. has ever authorized such misdelivery without presentation of original Bills.

33. Bills' numbers are HB11100219 (60 cartons, on board 10/2/11), HB11100205(78 cartons, on board 10/2/11), HB11100227(17 cartons, on board 10/2/11), HB11100228(122 cartons, on board 10/2/11), HB11100230(37 cartons, 10/12/11), HB11100243(290 cartons, on board 10/21/11), HB11100244(58 cartons, on board 10/21/11).

34. Swaxx admitted by e-mail dated 6/13/12 receiving the delivery of the cargo in good condition under the seven (7) Billsbyrecognizing the validity of the three corresponding invoices E11JM714, E11JM717 and E11JM718, which remain unpaid till this day.

35. Based on information and belief, TMC acting as a customhouse broker also cleared the cargo on behalf of Swaxx through the United States Customs without knowledge and permission of EIDIE or RBS, Citizen N.A. and through false representation to the U.S. Customs as to identity of the true owner of the cargo.

36. Based on information and belief, Swaxx has since resold the cargo to third parties and been insolvent.

37. The relationship between the three invoices and the

```
   seven(7) Bills are as follows:

      a. Invoice E11JM714 (Price :$154,877.40)
           i. B/L: HB11100219 (60ctns)
          ii. """""""""""205 (78ctns)
         iii. """""""""""227 (17ctns)
          iv. """""""""""228 (122ctns)
      (Total 277 CTNS, On Board 10/2/11)

      b. Invoice E11JM717 (Price: $37,593.12)
           i. B/L: HB11100230 (37 CTN, On Board 10/12/11)

      c. Invoice E11JM718 (Price: $77,034.90)
           i. B/L: HB11100243 (290ctns)
          ii. """""""""""244 (58ctns)
      (Total 348 CTNS, On Board 10/21/11)

   Grand Total: $269,505.42, 662 CTNS.
```

38. As a result of the foregoing, EIDIE has sustained damages in the amount of $269,505.42, which was proximately caused by the gross negligence, carelessness, recklessness, negligent acts and/or omissions and/or otherwise culpable conduct ofthe defendants, their agents and their employees.

39. Plaintiff has demanded upon TMC directly and through its agent ELG, the return of the cargo or in the alternative for reimbursement of its losses, but defendants have to date failed and refused to pay some or all of said claim.

## IV.   CAUSES OF ACTION

### COUNT I

**LIABILITY OF DEFENDANTSUNDER THE CARRIAGE OF GOODS BY SEA ACT**

40. Plaintiff incorporates the preceding paragraphs by

reference, as if said allegations were set forth at length herein.

41. By virtue of the foregoing, defendants TMC and ELG, jointly or severally have failed to make proper delivery of the cargo as a common carrier by sea in Los Angeles/Long Beach and are liable under the Carriage of Goods by Sea Act, 46 U.S.C. §1300 et seq.

   WHEREFORE, plaintiff, SHANGHAI EIDIE INTERNATIONAL TRADING CO., demands that judgment be entered in its favor and against defendants TRANSMODAL CORPORATION, SHANGHAI HANBO INTERNATIONAL LOGISTIC CO., LTD D/B/A E.L.G. SHANGHAI LTD AND, EVER-LEADING INTERNATIONAL INC., jointly and/or severally, in the amount of $269,505.42, plus pre-judgment interest from the date of supposed delivery in Los Angeles/Long Beach and the cost of this action.

**COUNT II**

**LIABILITY OF DEFENDANTS FOR BREACH OFMARITIME CONTRACT**

42. Plaintiff incorporates the preceding paragraphs by reference, as if said allegations were set forth at length herein.

43. By virtue of the foregoing, defendants breached its contractual agreements with plaintiff, and is therefore liable.

44. Adequate and prompt notice of the aforesaid breach has been

supplied to defendant TMC or its agent, ELG and plaintiff has at all times materially complied with all obligations under its contract.

WHEREFORE, plaintiff, SHANGHAI EIDIE INTERNATIONAL TRADING CO., demands that judgment be entered in its favor and against defendants TRANSMODAL CORPORATION, SHANGHAI HANBO INTERNATIONAL LOGISTIC CO., LTD D/B/A E.L.G. SHANGHAI LTD AND, EVER-LEADING INTERNATIONAL INC., jointly and/or severally, in the amount of $269,505.42, plus pre-judgment interest from the date of supposed delivery in Los Angeles/Long Beach and the cost of this action.

**COUNT III**

**LIABILITY OF DEFENDANTS FOR BREACH OF FEDERAL MARITIME COMMON LAW OF BAILMENT**

45. Plaintiff incorporates the preceding paragraphs by reference, as if said allegations were set forth at length herein.

46. Plaintiff tendered the aforesaid cargo to defendants in good and sound condition, for adequate consideration, as a bailment.

47. With no fault on the part of plaintiff contributing thereto, defendants failed and refused to return said cargo to plaintiff upon demand therefor.

48. By virtue of the foregoing, defendants are liable under

principles of common law bailment for the misdelivery of the leather clothing as described above.

WHEREFORE, plaintiff, SHANGHAI EIDIE INTERNATIONAL TRADING CO., demands that judgment be entered in its favor and against defendants TRANSMODAL CORPORATION, SHANGHAI HANBO INTERNATIONAL LOGISTIC CO., LTD D/B/A E.L.G. SHANGHAI LTD AND, EVER-LEADING INTERNATIONAL INC., jointly and/or severally, in the amount of $269,505.42, plus pre-judgment interest from the date of supposed delivery in Los Angeles/Long Beach and the cost of this action.

## V. DEMAND FOR JURY TRIAL

49. Plaintiff hereby demands trial by juryfor any and all claims if any under F. R. Civ. P. 38(a).

Dated: October 4, 2012
Newark, New Jersey

RESPECTFULLY SUBMITTED,

*s/Hanbin Wang*
Hanbin Wang, Esq.
Law Offices of Hanbin Wang
Attorneys for Plaintiff

## PLAINTIFF'S VERIFICATION

Cunmei Liu, under the penalties of perjury hereby affirms that I am the Legal Person Representative, a/k/a corporate representative of plaintiff Shanghai Eidie International Trading, Co. Ltd under the laws of China. I have full authority to sign and bind legally Shanghai Eidie International Trading, Co. Ltd. I am familiar with the facts and circumstances of this matter. I have read the foregoing Complaint in its Chinese translation and know the contents thereof, and that the same is true to my own knowledge except as to matters therein stated to be alleged on information and belief, and that as to those matters, I believe them to be true. The source of my information is based on my personal involvement in the matter, my conversation with my colleagues and the records maintained in our office.

Dated: October 4, 2012
Shanghai, China

_____
Cunmei Liu, Legal Person Representative,
AKA, corporate representative, on behalf of
Shanghai Eidie International Trading, Co., Ltd.

VERIFIED COMPLAINT BASED ON MARITIME CONTRACTS